UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                                            Criminal Case No. 08-20514

Michael Donnell Williams,                                Honorable Sean F. Cox

    Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Michael Donnell Williams ("Defendant") was charged in a two-count indictment with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Those charges stem from an October 18, 2007, search of Williams's vehicle and residence. The matter is currently before the Court on Defendant's Motion to Suppress Evidence, wherein he asks the Court to suppress evidence seized from his vehicle, and later from his residence, during warrantless searches on October 18, 2007. The parties have briefed the issues and an evidentiary hearing on this motion was held on June 19, 2009. For the reasons set forth below, the Court shall DENY the motion.

### BACKGROUND

It is undisputed that on October 18, 2007, officers with the Flint Area Narcotics Group searched Williams's vehicle, and later his home, without a search warrant. During the search of the vehicle, the officers found and seized a quantity of marijuana. Williams was arrested. The

officers then asked Williams for consent to search his residence at 2402 Mallory Street in Flint, Michigan. Williams signed a consent form. (Exhibit B to Govt.'s Br.). During the search of Williams's residence, the officers found and seized additional marijuana, drug paraphernalia and a firearm. Williams then gave a written statement. (Exhibit D to Govt.'s Br.)

The parties have divergent versions of the underlying facts that preceded the search of Defendant's vehicle.

In his motion, Defendant asserts that on October 18, 2007, FANG officers "stopped him while he was driving near the intersection of Hamilton and Martin Luther King" at approximately 3:00 p.m. (Def.'s Motion at ¶ 2). He maintains that the officers approached his vehicle "when it stopped near the intersection." (Def.'s Br. at 3). Defendant asserts that the officers "were not justified in stopping his vehicle because they did not observe a traffic violation, and did not reasonably suspect that criminal activity was afoot." (Def.'s Motion at ¶ 5). Defendant further asserts that, because the officers' stop of his vehicle violated the Fourth Amendment, the "Court should conclude that both defendant's consent to search the house and his incriminating statements to police were fruits of the stop." (Def.'s Br. at 8).

The Government, on the other hand, contends that Defendant, "of his own volition, parked his car in the middle of a public roadway. After watching Defendant parked in the roadway for approximately one minute, officers made contact with Defendant. In the ensuing conversation, Defendant admitted to possessing marijuana. After the marijuana was seized from his vehicle, Defendant was arrested. Defendant signed a consent to search form, allowing officers to search his home. Defendant was also apprised of his *Miranda* warnings. After his rights were read to him, defendant signed a waiver form, giving a full confession." (Gov't.'s Br.

at 2).

The Court held an evidentiary hearing on June 19, 2009.  At that time, the Government presented two witnesses, Officer Scott Watson and Special Agent Mark Kloostra, who were cross-examined by Defense counsel.  Defense counsel presented two witnesses, Defendant and Defendant's brother, Darren Williams, who were cross-examined by the Government.

For purposes of this motion, the Court makes the following factual findings from the testimony given at the evidentiary hearing.

## FINDINGS OF FACT:

Officer Scott Watson is a police officer with the Flint Police Department.  He has been working with the Flint Area Narcotics Group ("FANG") for approximately four and a half years.

Special Agent Mark Kloostra is an agent with the Bureau of Alcohol Tobacco and Firearms.

On October 18, 2007, Officer Watson was working with FANG and was investigating Defendant.  Prior to that date, Officer Watson had been advised that Defendant was involved with the possession of significant amounts of marijuana at a residence located at 2402 Mallory in Flint, Michigan.  Agent Kloostra was assisting with that investigation.

At approximately 11:00 a.m., the surveillance of the residence began.  At approximately 3:00 p.m., Williams left the residence carrying a white plastic bag.  Williams entered his vehicle and drove away.  Officer Watson, who was still in the area of the residence, did not authorize the vehicle to be stopped.

A few minutes later, however, Officer Watson heard over the police radio that Defendant

had stopped his vehicle in the middle of the road. Officer Watson then proceeded to the intersection of Dupont and Hamilton and saw Defendant's vehicle stopped in the road, some distance back from the area where a vehicle stopping for the traffic light at the intersection would stop.

Officer Watson then parked his vehicle on Hamilton. At this time, there were no vehicles in front of Defendant's vehicle nor where there any police vehicles in the area with activated lights or sirens. Although the traffic light was green, Officer Watson saw Defendant's vehicle stopped in the middle of the road for more than a minute.

As Defendant's vehicle remained parked in the roadway, several vehicles proceeded to stop behind Defendant's vehicle. Defendant's vehicle was impeding traffic.

After parking his vehicle, Officer Watson walked over to Defendant's vehicle. Defendant's vehicle was still running and Officer Watson did not ask Defendant to turn off the vehicle or exit the vehicle. Officer Watson approached the window of the passenger side of the vehicle and asked Defendant for his drivers license. Officer Watson then told Defendant that he had received information that Defendant was involved in marijuana sales and asked Defendant if Defendant had any marijuana in the vehicle with him and Defendant responded affirmatively that he did have "weed" in the backseat of the vehicle. At this point, another officer opened the door to the vehicle and seized the plastic bag, which did contain marijuana.

Defendant was then placed under arrest. A marked police vehicle arrived and Defendant was placed in it. While Defendant was in the police vehicle, Officer Watson had a conversation with him and asked for his cooperation. Officer Watson asked if the officers could search the Mallory residence and Defendant gave verbal consent to search the residence. Officer Watson

then had Defendant sign a written consent form after explaining the consent form to Defendant.

The officers then proceeded to the Mallory Street residence. When they arrived, the officers knocked on the door and Defendant's brother, Darren Williams, answered the door and let the officers inside. The officers searched the residence and ultimately found a firearm, digital scales, marijuana and various items with Defendant's name on them.

Agent Kloostra advised Defendant that they had seized the above items and read Defendant his *Miranda* rights. After having been advised of his rights, Defendant indicated that he wished to cooperate and give a statement. Agent Kloostra then took a verbal statement from Defendant. Agent Kloostra then wrote down what Defendant had told him. Defendant then read the written statement and signed it.

## ANALYSIS

In his motion, Defendant contends that the Officers "were not justified in stopping his vehicle because they did not observe a traffic violation, and did not reasonably suspect that criminal activity was afoot." (Def.'s Motion at ¶ 5).

The testimony in this case, however, establishes that Defendant improperly parked his vehicle in the middle of the road and that Officer Watson simply approached Defendant in his parked vehicle and asked him some questions. Under *United States v. Waldon*, 206 F.3d 597 (6th Cir. 2000), the Court concludes that it was a consensual encounter, which may be initiated without any objective level of suspicion.

In *Waldon*, the court explained that a consensual encounter may be initiated without any objective level of suspicion. It explained that "law enforcement officers may approach an individual and ask general questions without having any reasonable suspicion of criminal

activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." *Id*. at 603. Whether an encounter between an officer and a citizen is consensual depends on the officer's objective behavior.

Here, Officer Watson approached a vehicle that was improperly parked in the middle of the road and asked the driver for identification. Officer Watson then asked Defendant if he had any marijuana in the vehicle with him and Defendant responded affirmatively. Officer Watson did not engage in any overbearing or coercive activity in making these requests and there is no evidence suggesting that Officer Watson conveyed a message that compliance with his requests was required. To the contrary, the evidence shows that Officer Watson gave no indication that Defendant was not free to leave and to refuse to respond to questioning. For example, Officer Watson did not ask Defendant to exit his vehicle and did not ask Defendant to pull his vehicle to the side of the road. Although Defendant's vehicle was running when Officer Watson talked to Defendant, Officer Watson did not ask Defendant to turn the vehicle off.

Because law enforcement officers may approach individuals and ask them questions without having any reasonable suspicion of criminal activity, and because Officer Watson did not act in a manner to suggest that Defendant was not free to leave, the Court concludes that the conversation between Defendant and Officer Watson was a consensual encounter – at least until the point when Defendant responded affirmatively that he had marijuana in the vehicle. *U.S. v. Waldon*, 206 F.3d at 603-04. Once Defendant indicated that he had marijuana in the vehicle, the officers had probable cause to seize the marijuana from Defendant's vehicle.

In addition, even if the exchange had gone beyond the bounds of a consensual encounter,

6

Officer Watson had an independent basis to stop and detain Defendant because Defendant had committed a civil infraction in the presence of Officer Watson by stopping his vehicle in the middle of the road and impeding traffic. Thus, Officer Watson had probable cause to stop and detain Defendant.

Accordingly, for all of these reasons, Defendant's motion seeking to suppress the marijuana seized from his vehicle on October 18, 2007, shall be denied.

Although Defendant's motion did not challenge Defendant's subsequent consent to search the Mallory residence, Defense Counsel appeared to challenge the consent to that later search at the June 19, 2009 hearing.

The Fourth Amendment generally prohibits the warrantless search of a home. *United States v. Hill*, 79 Fed.Appx. 869, 872 (6th Cir. 2003)(citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). If proper consent is voluntarily given, however, a search of property is valid under the Fourth Amendment. *Id.*

Here, Defendant appears to challenge the voluntariness of his consent, asserting that he was "coerced" into giving written consent for the search after the search had been conducted. The Government, on the other hand, contends that Defendant voluntarily gave consent for the search prior to the search. Thus, the issue before the Court is whether evidence seized during the search should be excluded for lack of valid consent to search.

The Government bears the burden of proving that the consent to search was voluntary under the totality of the circumstances. *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998). "This burden entails proving by 'clear and positive' testimony that the consent was 'unequivocal, specific, intelligently given and not influenced by any duress or coercion.'" *Id*. (Internal citation

omitted).

After presentation of the testimony given at the June 19, 2009 hearing, the Court finds that Officer Watson's account of the events on the date in question is credible. The Court finds that while Defendant was in the police vehicle following his arrest, Officer Watson had a conversation with Defendant and asked for his cooperation. Officer Watson asked if the officers could search the Mallory residence and Defendant gave verbal consent to search the residence. Officer Watson then had Defendant sign a written consent form after explaining the consent form to Defendant. The Court further finds that the consent form was signed prior to the search of the premises. Although Defendant could have refused by simply saying no, the Court finds that during this brief conversation, Defendant freely and voluntarily, without coercion or any threats, knowingly gave the police officers permission to search the residence. The Court finds that the Government has met its burden of establishing that the search was voluntary under the totality of the circumstances. As a result, the evidence seized by the officers from the residence will not be suppressed.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

                S/Sean F. Cox
                Sean F. Cox
                United States District Judge

Dated: June 30, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                        Criminal Case No. 08-20514

Michael Donnell Williams,         Honorable Sean F. Cox

    Defendant.
_____/

## PROOF OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel of record on June 30, 2009, by electronic and/or ordinary mail.

                                        S/Jennifer Hernandez
                                        Case Manager